Thank you, your honors. My name is Nelson Harris, and I represent the Kingston at Wakefield Plantation Homeowners Association. I think that my time would, at least to begin with, would be most usefully spent talking a little bit about the history of, you know, homeowners associations in North Carolina. Prior to 1999, there were... Let me ask you this before you get to that. I know that the homeowners association had a declaration of covenants. Yes, your honor. And I know that the homeowners association could have filed its lien with the office and the clerk of superior court. They didn't do that. And I note that the homeowners association did not comply with the declaration of covenants for perfecting a lien. Is all of that correct? Your honor, they could have filed a... One, your honor, they could have filed a lien, but they did not because they didn't anticipate that this bankruptcy was going to be filed. All right, then how did they have the lien? Did they waive that lien? Our argument, your honor, is no. That there is a lien that came into existence under the terms of the declaration 30 days after the assessment came due, and that it exists without filing a claim of lien with the Wake County clerk of superior court. I don't want to preempt your argument, but that's not what your declaration says. I think that it is what the declaration says, your honor. You know, if you look at section 1 of the declaration, or my apologies, article 5, section 1, it provides that, you know, the annual assessment shall be a charge in continuing lien on the lot against which such assessment is made. Your honor, in that section, subsection 8, it doesn't say anything about filing. In section 12, it says, all sums assessed in the manner provided in this article but unpaid shall become a continuing lien in charge on the lot owned by the defaulting owner as of the assessment due date, which shall bind such lot and improvements then in the hands of the owner. I would notice that that doesn't say anything about filing, your honor, and if you look at what the Planned Community Act says, under the terms of the Planned Community Act, really you're only going to be effective as of filing. So there were liens in existence prior to the enactment of the Planned Community Act. They generally became effective upon the date that the assessment became past due, and our argument is fundamentally that those liens are not preempted by the provisions of the Planned Community Act. So under your argument then, the requirement of a written notice of assessment and the filing of that notice with the clerk is all surplus in that section 12. Your honor, in the Ignore that. It doesn't make a big difference. Right? Well, yes, your honor. It says that it goes and it talks about the creation of the lien and says that it existed 30 days after filing, and then what it says is to evidence the aforesaid lien. We have to prepare a written notice of the assessment lien specifying the amount, et cetera, and that that notice shall be signed by the officer or authorized agent of the association and shall be recorded in the office of the clerk of the Superior Court of Wake County. That's the county where this place is located, right? That is absolutely correct. It's down in Raleigh, right? Yes, your honor. Aren't you conflating lien creation with lien perfection by your argument? Um, I would say, yes, your honor. I think I would agree with that statement that we contend that there is a well, and no, I'll back off from that, your honor. We would contend that the lien always exists under this, let's call it contract basis, that was in effect prior, you know, 1999, but that to go in and do something in terms of, you know, enforcing it under the terms of the Planned Community Act or the like, that you would need to file the claim of lien so that you could take advantage of all of those provisions. And that is, under North Carolina law, the exclusive remedy for you, isn't it? Well, that is the question, your honor. That is the question of the decision by this court. I would say that under the old law, under the pre-1999 law, that you would have these claims of lien that came into existence as it provides for under the terms of the declarations like this one, and they would be in existence, you know, after 30 days. And you couldn't use the power of sale foreclosures that are provided for under the Planned Community Act, but you could just sort of sue on them. You could go out and you could file a civil action seeking to enforce the lien and, you know, get your judgment and even have the property sold to satisfy the lien. Doesn't the text of the PCA say that this is the exclusive procedure for perfecting and enforcing a lien? I believe that to be incorrect, your honor. Okay. and gave notice of this provision of the Planned Community Act. At the time, and just for your clerks and for your understanding, they've moved it around again, your honor. At the time, I believe that this is relevant to this case. Subsection D of 47F3116 provided that this section does not prohibit other actions to recover the sums for which subsection A of this section creates a lien. So we would argue based on that that that implies that it is not the sole and exclusive remedy. And they've moved it, your honor, or they've changed it. So if you go to the annotated statutes now, it's in subsection G, and it says the provisions of subsection F, which have to do with these lien foreclosures of this section, do not prohibit or prevent an association from pursuing a judicial foreclosure of a claim of lien, from taking other actions to recover the sums due to the association, or from accepting a deed in lieu of foreclosure. This provision where it's talking about judicial foreclosure in the new subsection G is, in fact, exactly the kind of thing that you would do prior to the Planned Community Act. Just for the court's edification, under the pre-Planned Community Act, you would have these liens. You could file something with the clerk of superior court, but then you would sue on them. You could not use these power of sale foreclosures. You had to use a judicial foreclosure, and a judicial foreclosure is involved in filing an action in the district court or the superior court and seeking to enforce whatever lien it was that was created by the declaration. The Planned Community Act is largely set up to provide the associations with filing a claim of lien and then pursuing what's called a power of sale foreclosure. The power of sale foreclosure or the foreclosure is where you just file a notice of hearing, you go in front of the clerk, and you foreclose just like you were going to foreclose a note and deed of trust. I would argue that, no, the Planned Community Act does not really limit you to the power of sale foreclosures and the lien foreclosures that are provided for therein. I would say that the new Subsection G and the old Subsection D, in fact, leave open the possibility that you can use the old kind of collection methods. Again, that is fundamentally the question here. If there is no preemption, you can just simply look at what this declaration provides for because the declaration clearly is anticipating that you can do collections or you can do lien foreclosures under both the Planned Community Act and under the old judicial foreclosures. I would like to point out the language in the declaration that provides for that. In my brief on page 9, I sort of highlighted it to make it a little bit easier to read. But in Section 12 of the declaration, it says, such lien for payment of assessments shall attach with the priority above set forth from the date that such payment becomes delinquent. Again, as a matter of contract, we would argue that this says that the lien becomes effective as of the date it becomes past due rather than some later date when it is filed and may be enforced by the foreclosure of the defaulting owner's lot and improvements thereon in like manner as a mortgage or deed of trust with power of sale on real property under Article 2A of Chapter 45. That little phrase is a reference to what you can now do under the terms of the Planned Community Act. You can do a power of sale foreclosure under Chapter 45 of the North Carolina General Statutes just as if the lien were a deed of trust. In order to do a power of sale foreclosure, you have to file the lien so that you can proceed with the foreclosure. But the declaration goes on to say, and or the association may institute suit. So you can just sue for the unpaid assessments and seek to enforce the lien. What are we to do with this language in the statute? It's just troublesome. Section 1-108 says that when North Carolina common law principles, quote, are inconsistent or conflict with this chapter, the provisions of this chapter will control. We would argue that this is not an inconsistency, that they have simply provided a new remedy. And in that regard, I would point out the Reedy v. Whitehart case, which, unfortunately, I was involved in. At the time, Your Honor, I contested the retroactive application of the provisions providing for fines of homeowners for violating declarations. And it was determined by the North Carolina Court of Appeals that it's just an additional remedy. I would argue that there's something similar here, that the common law or the contract-based ability to collect these unpaid assessments still exists, and all that they've done is add an additional remedy. And one thing that I'd want to point out in that case, Your Honor, is that not every planned community is covered by the Planned Community Act. There is a numerosity requirement. So there's lots and lots of little communities out there that are still forced to rely upon the old, let's call it, common law. Is this kind of like a golf course development or something there? Kingston at Wakefield? Pardon? You know, I don't know. I have no idea. Your Honor, I represent three or four homeowners associations. I've never been to this one. Is there a slew of these cases waiting for the determination of this one? Your Honor, this is a— I mean, there's only $600 and some dollars involved here. Absolutely. And you guys are expensive lawyers up here. I mean, it's pretty hard to send you up here for $600. There must be a mass filing of these things. I'm not billing my client for this, just in the interest of— I'm not nosing in. I thought maybe that it impacts whatever we do impacts a lot of things, whatever Judge Leonard or Judge Boyle did. It does impact a lot of things, and it impacts a lot of things because the way virtually every— and I'm going to be a little bit facetious here for effect, Your Honor. I think that there was an original declaration, you know, before 1999 that, you know, was recorded and then that every other attorney went through and, you know, worked off of. They all pretty much read the same, and many of them read like this, where they provide for liens to be in existence 30 days after the assessment is due or after they become laid or whatever. And they're— Get your red lights up. Why don't we save some of this for the rebuttal? Thank you, Your Honor. Mr. Rowland? Yes, sir, Your Honor. May it please the Court, I'm Lee Rowland, and I represent Kim Castell. The District Court should be affirmed for the following three reasons. First, since the North Carolina Planned Community Act applies to Kingston at Wakefield Plantation, the failure to file a claim of lien pursuant to the statutory procedure, it only entitles Kingston to a general unsecured claim in Ms. Castell's bankruptcy case. Second, Kingston does not have a perfected continuous lien because the common law is inconsistent and conflicts with the PCA's statutory procedure that requires the filing of a claim of lien, and therefore the PCA's statutory procedure controls this issue. Now, lastly, Kingston's declaration is invalid and unenforceable to the extent it impermissibly varies the PCA's statutory procedure for obtaining a lien for unpaid assessments. Now, it's undisputed that Kingston at Wakefield Plantation is subject to the Planned Community Act. Ms. Castell, by virtue of her ownership, is required to pay assessments for maintaining common areas. That brings it within the statute. As well as then upon filing bankruptcy, you know, Ms. Castell enters the bankruptcy estate and the trustee, Chapter 13 trustee, has the rights and powers of a bona fide purchaser of real property as if he had purchased it from Ms. Castell, and that's where the perfection issue comes into play. Now, the substance of property rights and security interests in bankruptcy is governed by North Carolina law, and therefore pursuant to the Planned Community Act, you know, they were required to file a claim of lien with the clerk of Superior Court for Wake County, North Carolina. And as a result, you know, since they did not file that claim of lien, they're only entitled to an unsecured claim. Now, as to the common law theory, as far as the fact that, you know, they have this continuous lien that's, you know, based on the common law, that doesn't really work with the Planned Community Act because it's both inconsistent and it conflicts with the procedure requiring the filing of a claim of lien. You know, Kingston cannot obtain this perfected security interest against Ms. Castell's home for, you know, for unpaid assessments without anything on the public record. You know, the whole purpose of this claim of lien procedure was to clear up the issues with the public record. Otherwise, the bankruptcy trustee who stands in the position of a bona fide purchaser after the filing, he has no record that there is a lien existing out there. Here it's just this common law lien that, you know, if the homeowner's dues were, you know, unpaid after 30 days, it's a lien. And that's exactly what the Planned Community Act and this provision sought to do away with to make a more accurate public record for bona fide purchasers as well as for real estate professionals that were out there. Now, here in the district court as a result, I mean, they correctly held that the PCA's procedure to obtain a perfected lien controls and that the common law theory, it clearly conflicts with the PCA's requirements and therefore the PCA controls. Now, to address Kingston's citation of supplemental authority after the briefs were submitted, the old subsection D, it does refer to the opportunity that other actions to recover sums for which subsection A, which creates the lien, are not prohibited. Well, what that means is that the homeowner's association, you know, may sue a Ms. Castell in her personal capacity, which of course didn't happen in this case. They may pursue the homeowner in their personal capacity in order to at that point obtain a judgment and then possibly at that, eventually thereafter, go through the judicial foreclosure. You know, that is the reason why that subsection exists. And in, I would like to draw the court's attention on the joint appendix, page 28, to the section 12 that is titled assessment lien and foreclosure. Further down in the paragraph, it states that the association may institute a suit against the owner personally obligated to pay the assessments and or foreclosure of the aforesaid judicial lien. Now, I mean, to the extent that that is clearly a remedy that is contemplated, but that is the in personam remedy. The issue before the court is what is the in rem remedy that the HOA has against the property in order to, you know, collect on those assessments. And based on that in rem remedy and what the Planned Community Act requires, a claim of lien was not filed and that's not available. And that is why the District Court and the Bankruptcy Court held that Kingston is only entitled to an unsecured claim in this case. To also address some of the issues with Well, if they had filed a suit against her personally and they prevail, obviously at the end of the day there would be a judgment that would be recorded. Correct. And that is one of the things the PCA is trying to make sure happens. Correct. And that was the point of, you know, having a documented in rem remedy that, you know, bona fide purchasers and the real property records to reflect. You know, in this case, if, you know, if Kingston is allowed to prevail on their argument, you know, there is no record. If you were able to just have a common law lien, the real property record or any record public record would reflect that. You know, and that's the issue and that's why the PCA came into play and they brought in this procedure. Regarding Kingston's declaration, it cannot alter the PCA's statutory procedure for obtaining an assessment lien in order to create this common law continuing lien. Because under section 47F-1-104, it says that the PCA may not be varied by declaration except as specifically provided in specific sections of the PCA. Now, the declaration does, as Kingston pointed out, you know, it does have this language as far as, well, this is just, you know, the filing of the claim of lien is to evidence, you know, the foresaid lien that we already have as well as, you know, it doesn't go into, it goes into effect 30 days after the assessment. Well, that language is, you know, effectively invalid and it's unenforceable because the PCA determines what a declaration can vary and what a declaration cannot. And in order to be able to vary that, the PCA has to specifically provide for it. And there are situations throughout the PCA that permit this. For instance, the declaration, it may require the association to carry other insurance besides that, what is required by the statute, as well as the declaration, they can alter a number of statutory rules with regarding to, you know, voting and proxies. But the first sentence of subsection A of the assessment for lien statute, that cannot be altered. That is the requirement and that is what Kingston was required to comply with in order to have a secured claim in Ms. Castell's bankruptcy case. And, Your Honor, unless there's any further questions, that's all I have. Thank you very much, sir. Thank you.  Thank you, Your Honor. Your Honor, I'd like to focus on two things. One, in my original time, I didn't finish the point I wanted to make about the terms of the declaration. In this Section 12 of Article 5, it provides for three potential remedies with respect to the lien. The first is the power of sale foreclosure. The second is it says and or the association may institute suit. And the third is and or foreclosure of the aforesaid lien judicially or may seek other available remedy or relief. So this declaration contemplates that you can do something other than the power of sale foreclosure that's set forth under the Act. And when they're talking about the aforesaid lien, we would respectfully assert it means that the lien that it describes as being in existence from 30 days. Your Honor, and at the bottom of that section it says the provisions of this Article 5 shall be in addition to the provisions of the applicable laws relating to liens. I presume that that's a reference to the Planned Community Act. In terms of how this might affect things, when a real estate attorney is doing a closing in North Carolina these days and there is a piece of property that is in a planned community, they contact the property manager for the planned community and they get an assessment amount owing from the property manager or from the board of the association if there's not one and they pay that amount off at the real estate closing. And they pay it off at the real estate closing because virtually all declarations contain language like this where it provides that there is a lien for unpaid assessments. So that's in existence without recording. So the primary impact of upholding the district courts and the bankruptcy courts' decision is now closing attorneys will be able to simply say, well, if there's no lien out there, we don't have to worry about it. So the reason we're here is because that will cause... If there's no lien out there, by that you mean if there's no lien recorded at the courthouse. If it's not recorded at the courthouse, Your Honor, under the district court decision, under the bankruptcy court decision, why do you have to go and contact the homeowners association to find out what is owing? And you do it now, and they've done it since before the Planned Community Act because... Is there any evidence of that in this record? I never heard you're up here testifying about how property lawyers do it. That's not how the property lawyers did it in my state when I did this kind of stuff. To the best of my knowledge... Before I looked up the record. Yeah, this record is very thin and says nothing about that. And I think that, you know, there's only two states, maybe three now, that even have the Planned Community Act based on the Uniform Planned Community Act. I want to say it's Pennsylvania and North Carolina. What we're talking about is whether your lien is your secured creditor or an unsecured creditor. So under your theory, you'd be an unsecured creditor, wouldn't you? Under my theory, we'd be a secured creditor after the 30 days because that's what the declaration says we are. And that is our argument. Our argument is that the Planned Community Act is not the sole and exclusive remedy, that these liens that are created by contract are valid in any existence. And perhaps you can enforce them using the provisions of the Planned Community Act unless you record a claim of lien with the clerk. But they're still out there. And finally, with respect to this argument that you need to have a claim of lien in the record to know that there's this obligation out there, well, you know, declarations are in the chain of title. And people can look at the declaration and find out how much is owing in the same way that they can contact a first or a second mortgage holder and find out how much is owing on the deed of trust. Declarations are in the chain of title. People can see and they can find out the amount that's owing by asking. Thank you very much, sir.
judges: Robert B. King, Henry F. Floyd, Clyde H. Hamilton